Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7576 | **DATE** | 8/27/2003 |
| **CASE TITLE** | Weinberg vs. Minnesota Mutual Life Ins Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** The parties' cross-motions (Docs 32-1 & 35-1) for summary judgment are denied. Parties are given to September 25, 2003 to file the Final Pretrial Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 2 8 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 46 |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEE WEINBERG,

      Plaintiff,

vs.

MINNESOTA MUTUAL LIFE INSURANCE
COMPANY, a professional corporation,

      Defendant.

01 C 7576

DOCKETED
AUG 2 8 2003

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on cross-motions for summary judgment. For the reasons set forth below, both motions are denied.

## BACKGROUND

This case involves questions of coverage under an occupational disability insurance policy. Plaintiff Lee Weinberg ("Weinberg") began working at the Chicago Board of Trade ("CBOT") shortly after graduating from college. He was initially hired as a runner, and after a time he purchased a seat and began trading on the floor in 1981. During his time at the CBOT, Weinberg traded both as an employee trader, for companies, and as a "local" trader, using his own funds.



On June 13, 1985, Defendant Minnesota Mutual Life Insurance Company ("Minnesota Life") issued Disability Income Policy No. 1-636-165H to Weinberg. As used in the policy, "disability" or "disabled" means that "due to sickness or injury, you are unable to perform the substantial and material duties of your regular occupation." The policy defines sickness as a "disease or illness which is treated or diagnosed while [the] policy is in force," and regular occupation as "your occupation or profession, including your professionally recognized specialty." In order to be considered disabled, the insured must be under the care of a licensed physician. The policy has been in force since 1985, and Weinberg has paid all of his premiums.

In 1995, 1996, and 1997, Weinberg's time on the trading floor totaled 134 days, 99 days, and 2 days, respectively. Weinberg last traded on the floor of the CBOT in February 1997. He leased his seat to another trader in that same month. He made no attempt to collect benefits under the policy until July 1997, when he mailed a notice of claim to Minnesota Life. Despite the policy requirement that the insured be under the regular care of a physician for the disabling condition to qualify for benefits, Weinberg did not seek medical attention for his condition until September 1997. Since that time, Weinberg has been examined by several different doctors and managed his symptoms with various medications. In October 1997, he filed a claim for benefits, describing his disability as taking the form of headaches, ulcers, and anxiety. He

claimed that his condition prevented him from trading on the floor of the CBOT because it compromised his concentration, ability to focus, and ability to make decisions. The claim form also stated that Weinberg was still working by trading at home.

Minnesota Life denied Weinberg's initial claim for benefits. In July 1998, Weinberg filed another claim that initiated a string of correspondence between the parties. Ultimately, in September 1999, Minnesota Life agreed to pay benefits for the year 1998. However, they denied benefits for any portion of 1997 as well as 1999 and years subsequent. In 2001, Weinberg filed suit seeking a declaratory judgment that he is entitled to benefits under the policy and alleging breach of contract by Minnesota Life.

The parties have now filed cross-motions for summary judgment, each contending that they are entitled to judgment as a matter of law on both counts of the complaint.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record–only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other.

*M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). With these principles in mind, we turn to the parties' motions.

## DISCUSSION

Although several important facts in this case are not in dispute, the parties' perspectives on Weinberg's situation differ substantially. In Weinberg's view, he was a floor trader when he bought the policy. He continued to earn income (as opposed to collecting unearned income from such sources as stock dividends and interest) as a trader solely from floor trading until he sold his seat on the floor in 2001, indicating his decision to make his departure from the CBOT permanent. Whatever money he made in the interim was not from trading but from managing long-term investments in stocks, bonds, and the like.[1] He argues that these activities yield unearned income

---

[1] A main component of Weinberg's argument that he has not taken on another occupation since leaving the trading floor is that he has made money investing his own funds. However, it is undisputed that during at least a portion of his time at the CBOT, Weinberg traded as a "local," using his personal funds. Thus, the source of the money traded gives little guidance as to the nature of the investment activity.

rather than earned income and thus do not constitute an occupation that would affect his coverage under the policy.

Minnesota Life, on the other hand, contends that Weinberg traded from home before his disability began. Because he was making a substantial amount of money from trading activities off the floor of the CBOT before February 1997, they argue, he voluntarily shifted his primary focus away from floor trading before his disability allegedly forced him to do so. Accordingly, they believe denial of benefits is appropriate because Weinberg's condition does not prevent him from home trading, the occupation he held at the onset of his disorder, and he is therefore not disabled for purposes of the policy.

The Seventh Circuit has held that, under Illinois law, issues of coverage under occupational disability insurance policies, such as whether an insured is totally disabled from performing his or her occupation, must be examined in the context of the occupation held by the insured at the time the disability begins, not the occupation held at the time the coverage began. *Winter v. Minnesota Mutual Life Ins. Co.*, 199 F.3d 399, 410 (7th Cir. 1999); *see also Matten v. SMA Life Assurance Co.*, 2002 WL 31433405 at *2 (N.D. Ill. Nov. 1, 2002); *contra Primavera v. Rose & Kiernan Inc.*, 670 N.Y.S.2d 223 (N.Y. App. Div. 1998) (holding that, under New York law, the occupation listed in the policy, not the occupation at the time the disability occurs,

controls issues of coverage). In the instant case, two issues are unclear from the evidence advanced by the parties: the time at which Weinberg's condition arose[2] and his "regular occupation" at that time. Under the controlling case law, this information is crucial to any determination of total disability and consequent eligibility for benefits. The evidence in this case supports multiple possible scenarios, each yielding a different result when *Winter* is applied. Deciding which result is correct turns on questions such as the sources of Weinberg's income and their relative sizes, what occupation or occupations[3] he was performing at the time of his disability, the nature of floor trading as opposed to home trading, and the credibility of the various doctors who examined

---

[2] In his first claim form, Weinberg did not specify a time when his symptoms began, instead describing them as "ongoing." At other times, Weinberg identified January 1997 as the beginning of his condition. *See* Pl's. Stmt. of Mat. Facts, ¶¶ 119, 138. However, the submitted documentation does not indicate that Weinberg received medical attention until September 1997.

[3] *See, e.g., Klein v. Nat'l Life of Vermont*, 7 F. Supp. 2d 223 (E.D.N.Y. 1998). In *Klein*, the insured was a podiatrist who worked simultaneously as a podiatric surgeon and as a manager of several podiatric clinics. *Id.* at 224-25. Between his purchase of the insurance policies at issue and the time of his disability, Klein's surgical activities dropped significantly, and his management activities correspondingly increased. *Id.* Accordingly, the court decided that Klein's management activities constituted an occupation within the terms of his policies, and because his disability did not prevent him from carrying on those activities, he was not entitled to benefits. *Id.* at 229, 231. Contra *Bell v. Continental Assurance Co.*, 260 N.E.2d 114, 115 (Ill. App. 1970) (insured occupied only one occupation prior to disabling injury); *Stender v. Provident Life and Accident Ins. Co.*, 2000 WL 875919, at *7 (N.D. Ill. June 29, 2000) (same).

him. It is clear that these questions cannot be answered without further factual development, rendering this case unsuitable for resolution by means of summary judgment.

## CONCLUSION

Based on the foregoing analysis, the parties' cross-motions for summary judgment are denied.

*[signature: Charles P. Kocoras]*

Charles P. Kocoras
Chief Judge
United States District Court

Dated: AUG 2 7 2003